**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CR-07-108-M |
| ) | |
| KEITH TERRELL THOMPSON, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Before the Court is defendant Keith Terrell Thompson's ("Thompson") Motion to Suppress Evidence Obtained as a Result of an Illegal Arrest, Search and Seizure, filed May 15, 2007. On May 24, 2007, the government filed its response. On May 30, 2007, the Court conducted a hearing on the motion to suppress.[1] Having reviewed the parties' submissions, and having heard the evidence presented, the Court makes its determination.

I.  Factual Background[2]

At approximately 10:00 p.m. on March 7, 2007, Officer Zepeda and three other OCPD officers were driving eastbound on SE 15th Street in Oklahoma City, Oklahoma. Officer Zepeda and two other officers[3] turned into the parking lot of a 7-11 store at the corner of SE15th and High Streets.[4] Officer Zepeda parked his vehicle approximately twelve feet behind Thompson's car. The

---

[1]At the hearing, Officer Sinue Zepeda of the Oklahoma City Police Department ("OCPD"), Detective John Michael Homan of the OCPD, Tina Stratton, and Orleanthea Lynn Mosley testified. Additionally, two photographs of the 7-11 store where the events in question occurred were admitted, and the videotape of the March 13, 2007 interview of Thompson was played.

[2]This factual background is based upon the evidence presented at the hearing.

[3]Each officer was driving a separate police car.

[4]Officers consider this a "high crime" area.

other officers parked their vehicles closer to the 7-11 store and to the west of Thompson's vehicle.

Thompson had just made a purchase at the 7-11 store and was walking to his car carrying a drink and a donut. Officer Zepeda walked up to Thompson and asked if he could speak with him. Thompson said yes. Officer Zepeda then asked Thompson if he had anything illegal on him. Thompson did not reply and, according to Officer Zepeda, became nervous. Officer Zepeda told him to relax and again asked him if he had anything illegal on him. Thompson stated that he had a gun in his back pocket. At about this time, a fourth officer arrived at the 7-11 store and walked over to where Officer Zepeda and Thompson were talking.

Officer Zepeda told Thompson to put his hands on the car, and while saying this, Officer Zepeda grabbed Thompson's pant pocket and removed the gun. Officer Zepeda then handed the gun to the other officer and handcuffed Thompson. Officer Zepeda walked Thompson back to his police car, searched him "incident to arrest,"[5] and placed him in his police car. While running Thompson's information through his computer, Officer Zepeda asked Thompson if he was a convicted felon. Thompson stated that he was, and this statement was confirmed through the computer check. Thompson was subsequently booked into the Oklahoma County Jail.

On March 13, 2007, Officer Homan visited Thompson who was still detained in the Oklahoma County Jail on the gun charge. Officer Homan read the Miranda rights to Thompson off a form, and Thompson stated he understood and would talk. During the interview, Thompson admitted he had possessed the gun for less than two weeks before his arrest.[6]

---

[5]The serial number on the gun was partially obliterated, and Thompson was being arrested on that basis.

[6]The interview was videotaped.

Thompson is now charged in a one-count indictment with the illegal possession of a firearm and ammunition after having previously been convicted of a felony in violation of 18 U.S.C. § 922(g)(1).

II.   Discussion

    A.   Initial contact with Thompson

The government asserts that the initial contact between Thompson and Officer Zepeda was consensual until just after Thompson told Officer Zepeda that he had a gun in his pocket. "[W]here the validity of a search rests on consent, the [government] has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." *Florida v. Royer*, 460 U.S. 491, 497 (1983).

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way.

*Id.* at 497-98 (internal citations omitted). "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

Further,

> a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

*Id.* at 555 (internal citations omitted). Whether a seizure has occurred does not depend on whether the individual has been expressly told by the police that he was free to decline to cooperate with their inquiry. *Id.*

Having carefully reviewed the parties' submissions, and having heard the evidence presented at the hearing, the Court finds that the government has met its burden of proving that Thompson's consent was obtained and that it was freely and voluntarily given. Specifically, having considered all of the circumstances surrounding this incident, the Court finds that Thompson was not "seized" within the meaning of the Fourth Amendment when Officer Zepeda asked him questions, and specifically the questions regarding whether he had anything illegal on him, and when Thompson responded to those questions. Officer Zepeda did not display a weapon, did not touch Thompson until after he had stated he possessed a gun, and did not ask the questions in an aggressive or demanding tone. Further, the Court finds that while there were a number of officers present at the scene, which in some situations could be threatening, the other officers were either in the 7-11 store itself or outside the store talking to other individuals and only Officer Zepeda approached Thompson. Finally, while it may be likely that Thompson would not have been able to back his car

out without Officer Zepeda moving his vehicle,[7] the Court finds that based upon the totality of the circumstances this fact alone does not convert the otherwise consensual encounter into a seizure.

Accordingly, the Court finds that Officer Zepeda's initial contact with Thompson did not violate the Fourth or Fifth Amendment.

B. <u>Officer Zepeda's subsequent actions</u>

The government asserts that Officer Zepeda's actions once he knew Thompson possessed a firearm were appropriate.[8] To determine the reasonableness of an investigative detention, a court engages in a two-part inquiry:

> First, [a court] must decide whether the detention was justified at its inception. The government must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. Those facts must tend to show that the detainee has committed or is about to commit a crime. Second, the officer's actions must be reasonably related in scope to the circumstances which justified the interference in the first place. At both stages, the reasonableness of the officer's suspicions is judged by an objective standard taking the totality of the circumstances and information available to the officers into account.

*United States v. Johnson*, 364 F.3d 1185, 1189 (10th Cir. 2004) (internal quotations and citations omitted). Further, "[s]ince police officers should not be required to take unnecessary risks in performing their duties, they are authorized to take such steps as [are] reasonably necessary to protect their personal safety and maintain the status quo during the course of [an investigative detention]." *United States v. Lang*, 81 F.3d 955, 966 (internal quotations and citation omitted).

---

[7]Officer Zepeda testified that Thompson's car was not blocked in and that he could have backed out. Ms. Stratton and Ms. Mosley, however, testified that Thompson's car was surrounded and that Thompson would not have been able to back his car out.

[8]It is unclear whether Thompson is even challenging Officer Zepeda's subsequent actions or is only challenging his initial contact with Thompson.

Having carefully reviewed the parties' submissions, and having heard the evidence presented at the hearing, the Court finds that Officer Zepeda's actions once he knew Thompson possessed a firearm were appropriate. Specifically, the Court finds that based upon Thompson's statement that he had a gun in his back pocket, Officer Zepeda was warranted in grabbing Thompson's pant pocket to investigate whether the possession of the gun was in fact illegal as indicated by Thompson and to protect himself in a high crime area. Further, the Court finds that temporarily detaining Thompson and removing the gun was reasonable in light of all the circumstances facing Officer Zepeda.

Accordingly, the Court finds that Officer Zepeda's subsequent actions did not violate the Fourth or Fifth Amendment.

    C.    Subsequent confession

Thompson asserts that the admissions he made during the March 13, 2007 interrogation should be suppressed as "fruit of the poisonous tree." All evidence is not "fruit of the poisonous tree" "simply because it would not have come to light but for the illegal actions of the police." *Brown v. Illinois*, 422 U.S. 590, 599 (1975). A court must determine "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* (internal quotations and citation omitted). A court should consider the following factors in determining whether a confession is obtained by exploitation of an illegal arrest: whether Miranda warnings were given, the temporal proximity of the arrest and the confession, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct. *Id.* at 603-04.

Because this Court has found that Officer Zepeda's actions did not violate the Fourth or Fifth Amendments, the Court finds that there was no primary illegality and, thus, Thompson's admissions on March 13, 2007 are admissible.  Further, the Court finds that even assuming that Officer Zepeda's actions on March 7, 2007 were illegal, Thompson's March 13, 2007 admissions are sufficiently attenuated from the March 7, 2007 incident to be purged of any taint from any illegality and are admissible.  Prior to the March 13, 2007 interrogation, Miranda warnings were given to Thompson.  Further, the Court finds that the passage of six days from the initial incident was sufficient de-escalation between the initial seizure and arrest and Thompson's subsequent admissions.  Finally, the Court finds that Officer Zepeda's conduct, even if found illegal, was not flagrant misconduct and does not weigh against attenuation.

Accordingly, the Court finds that the admissions Thompson made during the March 13, 2007 interrogation should not be suppressed.

III.   Conclusion

For the reasons set forth above, the Court DENIES Thompson's Motion to Suppress Evidence Obtained as a Result of an Illegal Arrest, Search and Seizure [docket no. 23].

**IT IS SO ORDERED this 31st day of May, 2007.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE